MORRIS ET AL., APPELLEES, *v.* MILLER ET AL., APPELLANTS.

(No. 5536—Decided June 12, 1957.)

462

*Mr. Victor F. Schmidt,* for appellees.
*Mr. L. P. Henderson,* for appellants.

*Per Curiam.*  This appeal was originally on questions of law and fact from the Columbus Municipal Court, but, on August 31, 1956, this court dismissed the appeal as on law and fact, and the cause was retained for determination on questions of law only.

The petition of plaintiffs, appellees herein and hereinafter referred to as the plaintiffs, seeks damages which they claim are the result of certain representations concerning a house, which they purchased from defendants, appellants herein and hereinafter referred to as defendants, its structure and premises and especially the plumbing and sewer system.  Said representations are alleged to have been made by defendant William R. Miller, Jr.  The plaintiffs allege that the statement was made prior to the signing of a certain written purchase contract and also prior to the signing of a land contract, which was executed some three days after the purchase contract was signed by the parties.

Plaintiffs claim that it will cost approximately $650 to correct the plumbing and drainage conditions and ask for $1,350 as damages for inconvenience in carrying water for washing and cooking, unnecessary labor and inconvenience, unhealthful conditions during ten months time, constant odors in the house, and inability to invite friends and relatives upon the premises in view of the continuing stench.

Plaintiffs claim that defendant William R. Miller, Jr., the vendor, at the time of showing the house and before either of the contracts was entered into, asserted that the plumbing and sewer system in the house and about the premises was perfect because it had passed inspection.  Evidence was introduced by the plaintiffs to show that such system not only had not passed inspection, but did not come up to the conditions required by the Franklin County plumbing inspection authorities.

Defendants, in their joint answer, admit the execution of

the land contract on December 15, 1954; admit that, before the signing of the contract, the plaintiffs made a full and complete inspection of the premises; and deny other material allegations of the petition.

As a second defense in the joint answer, defendants allege that the plaintiffs violated the provisions of said contract in certain respects, and ask that the contract be declared null and void and that the court cancel the same.

The issues made up by the plaintiffs' petition and the first defense of the joint answer of the defendants were submitted to a jury, the court reserving the equitable issues raised in the second defense. After the evidence was in, the court rendered judgment upon the verdict of the jury in favor of the plaintiffs in the amount of $1,000 and rendered a finding in favor of the plaintiffs for their costs upon the evidence submitted to it as to the second defense.

The errors assigned by defendants are seven in number. Upon reading the transcript of the testimony, we believe that most of them can be answered by a reference to *Drew* v. *Christopher Construction Co., Inc.*, 140 Ohio St., 1, 41 N. E. (2d), 1018, the syllabus of which is as follows:

"1. Where false representations of a vendor made as positive statements of facts clearly implying his knowledge of the truth thereof induced a purchaser to buy and pay for a residence property and such representations were material, being of such a nature as to affect the character, utility and value of the property, and were then known by the vendor to be untrue, but were relied upon by the purchaser as true, he may maintain an action to recover the damage sustained as a result thereof. (*Gleason* v. *Bell*, 91 Ohio St., 268, approved and followed.)

"2. In an action for the recovery of damages based upon a claim of false representations in the sale of real estate, evidence is admissible not to contradict or vary the terms of the written contract of purchase and sale but to show material misrepresentations relative to the subject matter of the contract whereby the party was induced to enter into the contract which resulted in his loss or damage."

The holding in that case follows *Gleason* v. *Bell,* 91 Ohio

St., 268, 110 N. E., 513, in which case paragraph one of the syllabus reads as follows:

"Where a purchaser was induced to buy and pay for a city residence, by false representations made to him by the vendor as positive statements of fact clearly implying knowledge of the owner of the truth of the facts stated, and made under such circumstances that the vendor should have known of the falsity of the representations, and they were of such a nature as to affect the character, utility and value of said property, and the purchaser had a right to and did rely thereon, and suffered damage by reason thereof, he may recover. In such a case an averment that the vendor knew the representations to be false and made them with intent to deceive is not essential."

In view of this holding, we find no prejudicial error in the trial court's admission of evidence, even though there was a written contract of sale. Furthermore, it was not necessary to allege that the defendants knew the representations were false, if they were false, that they were positive statements of fact, and that they were relied upon by the purchasers. The last sentence of paragraph one of the syllabus in *Gleason* v. *Bell, supra,* reads: "In such a case an averment that the vendor knew the representations to be false and made them with intent to deceive is not essential."

Defendants requested three special instructions to the jury before argument. No. 3 was given and Nos. 1 and 2 were refused. In view of the law laid down by the Supreme Court in the *Drew case, supra,* we feel that the trial court properly refused to give instructions Nos. 1 and 2.

Another question raised by the brief of the defendants, and perhaps covered by assignment of error No. 7, refers to the following language in the transcript:

"Now, there will be two forms of verdict: 'Morris, Plaintiffs, v. Miller, Defendant. We the jury in this case, being duly impaneled and sworn, do find for the defendant, William R., Jr., and Leota Miller, on their answer to the peition [petition].' That will be signed by nine or more of the jurors, and the foreman, of course, signs first.

"And then I have the other form of verdict in this case

if you find for the plaintiffs: 'We the jury in this case, being duly impaneled and sworn, do find for the plaintiffs, John F. and Idan [Ida] J. Morris, on the petition and fix the amount in blank dollars.' In other words, if you find for the plaintiffs there, then it would be your duty to find out what, if anything, damages are due to the plaintiffs and fix the amount and fill in there where it says 'blank' dollars. And, of course, if that is your verdict, of nine or more of your jury, the foreman will sign and the other persons will sign the verdict.''

Attention is also called to that portion of the transcript relative to the polling of the jury:

''Thereupon the court requested the bailiff to read the verdict, heretofore examined by the court, which is as follows:

''The bailiff: 'Case of John F. and Ida J. Morris, v. William R., Jr., and Leota Miller. We, the jury in this case, being duly impaneled and sworn, do find for the plaintiffs John F. and Ida J. Morris on their petition and fix a sum of $1,000. Richard Patrick, foreman; Josephine Leonard, Edward O'Malley, Edward Easton, Joanne Hickey, Agnes Brown, LaVerne Mertens, Jane Hammond, and Beulah Kaderly.'

''The Court: Members of the jury, is this your verdict?
'' * * *

'' (Thereupon all jurors indicated in the affirmative.)
'' * * *

''The Court: Did you want to poll the jury, Mr. Henderson?

''Mr. Henderson: Yes, if you please.
'' * * *

'' (Thereupon the court polled the jury.) ''

Although the language, ''the foreman, of course, signs first,'' included in the court's instructions on the forms of verdicts, which followed the reading of the language for both a defendants' verdict and a plaintiffs' verdict in substantially the same language, was not necessary, we do not conclude that the same was prejudicial in such a manner as to have prevented the defendants from having a fair trial. In the first place, the language in almost identical form was used by the court after reading the form to be used in the event of a verdict for the

defendants and in explaining the form in the event of a verdict for the plaintiffs. In effect, the language or statements seem to nullify each other. A better reason, however, for holding that neither the foreman nor the other members of the jury were confused is that the judge read the verdict to the jury, as shown by the portion of transcript above quoted; and the record shows that when the jury was asked whether that was its verdict, all jurors answered in the affirmative. Then the court asked counsel for the defendants if he wished the jury to be polled, and the record shows that defense counsel answered, "Yes," and that the jury was polled. Hence, both group and individual polling of the jury made it clear that the jurors understood the kind of verdict they were rendering.

We hold there was no prejudicial error in the conduct of the trial or in the judgment of the court, that the errors assigned are not well founded, and that the verdict of the jury should not be disturbed. The judgment of the lower court upholding the verdict of the jury and against the defendants on the second defense is not against the manifest weight of the evidence.

*Judgment affirmed.*

PETREE, P. J., BRYANT and HORNBECK, JJ., concur.

HORNBECK, J., of the Second Appellate District, sitting by designation in the Tenth Appellate District.